[No. 50702–3.   En Banc.   April 17, 1986.]

*In the Matter of the Personal Restraint of*
GARY JAMES TAYLOR, *Petitioner.*

*Robert C. Boruchowitz* and *John W. Phillips* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* for respondent.

PEARSON, J.—In this personal restraint petition (PRP), Gary Taylor challenges his conviction on two counts of first degree murder, claiming the rule announced in *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983) should apply retroactively to his case and consequently this court must declare his warrantless arrest and the subsequent search of his automobile unconstitutional. Since we hold the analysis contained in *Ringer* concerning the exigent circumstances exception to the general prohibition against warrantless searches and seizures should not apply retroactively on collateral review, we deny the petition.

I

On August 21, 1974, an elderly couple was found shot and killed in their home. On the same day, at 4:30 a.m., an automobile belonging to Taylor, in which he was a passen-

ger, was stopped for speeding. The driver of the vehicle, James Semore, failed to produce a valid operator's license. To ascertain whether the issuance of a citation would be appropriate, the arresting officer made a radio check and received information which gave him reasonable grounds to believe Taylor and Semore had recently defrauded a restaurant and were fleeing from the scene, in violation of RCW 9.45.040. Based on this information, the officer arrested both Taylor and Semore. A pat–down search of both men incident to their arrest produced three prescription bottles from Semore's jacket pocket. Each was labeled as a prescription for an individual named "Pierce" and each contained pills. Semore's other jacket pocket held a quantity of jewelry, including three ladies' watches. Semore told the officer he had purchased the drugs at the restaurant from someone he did not know and had not seen before. Semore was then informed he was also under arrest for a narcotics violation.

Since Semore possessed several ladies' watches and pills bearing the name of an unknown party, and because he could provide no reasonable explanation for possession of these items, the officer suspected Semore had stolen them. Remembering there was an adding machine on the floor in back of the front seat of Taylor's car, the officer returned to the vehicle and removed the machine to check its serial number for a possible reported theft. When the adding machine did not show up as stolen property, the officer returned it to the car and, in doing so, noticed a credit card wallet lying on the seat and another pill bottle on the floor in front of the passenger seat. The wallet held numerous credit cards in the names of the murder victims as did the pill bottle prescription label. After Taylor and Semore were jailed, Taylor's car was impounded. A pistol belonging to Taylor, which later proved to be the murder weapon, was found during a further search of the car.

Taylor was subsequently tried and found guilty on two first degree murder counts. Taylor appealed and, among other things, assigned error to the trial court's refusal to

suppress the evidence found in his car. The Court of Appeals affirmed Taylor's conviction. *State v. Taylor,* 22 Wn. App. 308, 589 P.2d 1250 (1979). This court subsequently denied review of the Court of Appeals decision. *State v. Taylor,* 92 Wn.2d 1013 (1979). Taylor now rechallenges his warrantless arrest and the subsequent search of his automobile.

## II

The threshold question in the instant case is whether Taylor's PRP raises issues which this court may consider on collateral review. The State contends that because Taylor challenged his warrantless arrest and the subsequent search of his automobile on direct review, he is now prohibited from renewing the challenge on collateral review. The State relies for this proposition in part on the Supreme Court's holding in *Stone v. Powell,* 428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 (1976) and this court's opinion in *In re Haverty,* 101 Wn.2d 498, 681 P.2d 835 (1984). Taylor, on the other hand, contends that whether a petitioner raised issues on direct appeal is irrelevant to this court's review of a PRP. Taylor rests his argument on this court's opinions in *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983) and *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982).

In recent years this court has attempted to formulate a unified, systematic and expeditious procedure for postconviction relief. *See* RAP 16.3–16.5. In formulating this procedure, we have recognized that a PRP cannot be allowed to deteriorate into a writ of appeal, allowing a petitioner to institute appeal after appeal. *In re Hagler,* at 826. We have likewise recognized the need to protect against constitutional errors actually prejudicing the petitioner. *In re Hews,* at 86. Thus, we have sought to achieve a balance between the interest in error–free trials and the interest in finality of judgments. *In re Hagler,* at 826. In seeking this balance, we have held that a petitioner cannot be automatically barred from raising an issue on collateral review merely because he failed to raise the issue on appeal. *In re Hews,*

*supra.* Rather, in each instance a petitioner bears the burden of showing actual and substantial prejudice created by the alleged error. *In re Hews,* at 86.

Recently this court was once again asked to clarify the rules applicable to postconviction relief. The issue presented was whether RAP 16.4(d)[1] prevented a petitioner from raising, in a second PRP, an issue that could have been, but was not, raised in petitioner's first PRP. Consistent with the rationale of *In re Hagler* and *In re Hews,* this court followed the Supreme Court's lead in *Sanders v. United States,* 373 U.S. 1, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963) and held that the failure to raise an issue in the first petition would not automatically bar one from raising the same issue in a subsequent petition. Rather, a petition should be dismissed only if the same issue was previously "heard and determined". *In re Haverty,* 101 Wn.2d 498, 681 P.2d 835 (1984). For an issue to have been previously heard and determined, it must be shown that:

> (1) [T]he same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*In re Haverty,* at 503 (quoting *Sanders v. United States, supra*).

We believe the rule adopted in *In re Haverty* should apply here. As Taylor points out, *In re Haverty* involved the correct interpretation of RAP 16.4(d). There is no similar rule which limits the ability of a petitioner to raise, in a PRP, issues which were already raised on appeal. Hence, *In re Haverty* is not directly on point. However, the rationale underlying *In re Haverty* and the various cases preceding

---

[1]RAP 16.4(d) provides:

"The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances. *No more than one petition for similar relief* on behalf of the same petitioner will be entertained without good cause shown." (Italics ours.)

*In re Haverty* clearly support a rule which limits the ability of a petitioner to raise, on collateral review, issues which were raised on direct review. A petitioner cannot be allowed to institute appeal upon appeal and review upon review in forum after forum ad infinitum. *In re Hagler,* at 826. On the other hand, collateral review must be available in those cases in which petitioner is actually prejudiced by the error. We believe the opinion in *In re Haverty* accommodates these interests. Hence, we hold the mere fact that an issue was raised on appeal does not automatically bar review in a PRP. Rather, a court should dismiss a PRP only if the prior appeal was denied on the same ground and the ends of justice would not be served by reaching the merits of the subsequent PRP.

▮ By "ground" we mean simply a distinct legal basis for granting relief. Should doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant. In addition, the prior denial must have rested on an adjudication of the merits of the ground presented in the subsequent application. *Sanders v. United States, supra* at 16. Finally, although the opinion in *In re Haverty* does not define the term "ends of justice", we note with approval the Supreme Court's discussion of the term.

Even if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair; we canvassed the criteria for a full and fair evidentiary hearing recently in *Townsend* v. *Sain,* [372 U.S. 293 (1963)] and that discussion need not be repeated here. If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing *an intervening change in the law* or some other justification for having failed to raise a crucial point or argument in the prior application. Two further points should be noted. *First,* the foregoing enumeration is not intended to be exhaustive; the test is "the ends of

justice" and it cannot be too finely particularized. *Second,* the burden is on the applicant to show that, although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground.

(First italics ours.) *Sanders v. United States, supra* at 16–17.

With these rules in mind, we now proceed to our discussion of the application in the instant case. Taylor rechallenges his conviction on the basis that under *State v. Ringer, supra,* his arrest and the subsequent search of his car were unconstitutional. Taylor asserts that *Ringer* constitutes a change in the law and therefore the ends of justice require a redetermination of the constitutionality of his arrest and the subsequent search. We believe Taylor is correct in asserting that *Ringer* constitutes a change in the law. Thus, we hold Taylor's petition is properly before this court. He may challenge his warrantless arrest and subsequent search. The remaining issue then is whether *Ringer* should apply retroactively.

Our discussion of this issue begins with a review of the *Ringer* decision. At issue in *Ringer* was the constitutionality of two automobile searches. Upon finding that neither search was constitutional under Const. art. 1, § 7, this court established two independent rules: (1) pursuant to Const. art. 1, § 7, a warrantless search of a person is permissible only to remove any weapons the arrestee might seek to use in order to resist or effect an escape or to avoid destruction of evidence; and (2) when police have probable cause to search an automobile they may do so without a warrant only if they are confronted with exigent circumstances. *Ringer,* at 699–701.

Under established rules of law an officer generally has the authority to make a warrantless arrest for a misdemeanor committed in his presence. *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978); *State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967); *State v. Miles,* 29 Wn.2d 921, 190

P.2d 740 (1948). In the instant case the officer stopped Taylor and his companion at 4:30 a.m. for speeding. The stop was made a short time after they departed from a nearby restaurant without paying the bill. Absconding from a restaurant without paying constitutes a misdemeanor. *See* RCW 9.45.040. To "abscond" means to flee or to depart secretly. *Webster's Third New International Dictionary* 6 (1971). Under these facts, clearly Taylor and Semore were absconding from the restaurant when the stop occurred. Hence, the warrantless arrest was authorized and the officer properly conducted a search of Semore as an incident to his arrest.

Upon searching Semore, the officer found several ladies' watches and pills obviously not prescribed for Semore. Semore offered no reasonable explanation for possessing these items. In addition, the officer had seen an adding machine in Taylor's car. Under these circumstances, the officer had reasonable cause to believe that a theft had occurred and that the vehicle was involved. The officer therefore had probable cause to search the vehicle. *See State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980).

Having decided that the officer had probable cause to search the vehicle, it is unnecessary for us to determine whether the search of the automobile was authorized as an incident to either Taylor's or Semore's arrest. Thus, we do not address the retroactive application of that part of *Ringer* which discusses the incident to an arrest exception to a warrantless search, since our analysis of the retroactivity of the exigent circumstances portion of *Ringer* is dispositive.

Since the officer had probable cause to search the vehicle, the remaining question is whether the *Ringer* requirement of exigent circumstances is retroactive. If not, then although there was some confusion in prior cases, the search was conducted within constitutional parameters. *See State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974).

In the past the criteria for determining whether a new rule should apply retroactively were essentially three:

(a) whether the purpose of the new rule would be served by retroactive application, (b) what was the extent of reliance by law enforcement authorities on the old standards, and (c) what effect would retroactive application of the new standards have on the administration of justice. *Stovall v. Denno,* 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). Recently this rule has been changed somewhat. The threshold question now is whether the new rule constitutes a clear break with past precedent. If a rule is a clear break with the past, it will invariably be nonretroactive. *United States v. Johnson,* 457 U.S. 537, 549, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982). On the other hand, when a new rule is neither a clear break with past precedent nor a reapplication of settled law to new facts, the rule will apply retroactively to all convictions that were not yet final at the time the decision was rendered. *Johnson,* at 562; *see also Shea v. Louisiana,* 470 U.S. 51, 56–57, 84 L. Ed. 2d 38, 105 S. Ct. 1065, 1069 (1985). If, however, such a rule is raised on collateral review, the determination of retroactivity is based on the criteria established in *Stovall. In re Sauve,* 103 Wn.2d 322, 692 P.2d 818 (1985). Hence, when a new rule which is a clear break with the past is raised on collateral review, it invariably will be nonretroactive. If, however, it is not specifically a clear break, then it will be retroactive only if it passes the more stringent test established in *Stovall.* In the instant case we find it unnecessary to determine whether the rule requiring exigent circumstances prior to making a warrantless search, as analyzed in *Ringer,* was a clear break with past precedent since even under the *Stovall* test the rule should apply prospectively only.

The purpose of the rule announced in *Ringer* was the prevention of unreasonable searches and seizures and deterrence of illegal police conduct. This court has consistently held that such a purpose strongly supports prospectivity. *In re Sauve,* at 328. In addition, as we noted in *In re Sauve,* the effect on the administration of justice strongly dictates against retroactive application of new rules on collateral review when the new rule does not affect the truth–

finding aspect of trial. Furthermore, we believe it would be unreasonable to expect law enforcement authorities to have foreseen the bright line rule drawn in *Ringer* prior to its announcement. In sum, the rule announced in *Ringer* has little to do with the truth–finding function of a criminal trial and retroactive application would clearly disrupt the administration of justice. Weighing these considerations, we conclude the exigent circumstances rule announced in *Ringer* should not apply retroactively to cases on collateral review. The petition is denied.

DOLLIVER, C.J., UTTER and BRACHTENBACH, JJ., and CUN-NINGHAM, J. Pro Tem., concur.

DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur in the result.