**FILED**
**SEPTEMBER 10, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36771-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TANDY SHIREE LUNA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Tandy Luna appeals convictions for four counts of forgery and four counts of second degree identity theft. She contends she would have accepted a plea offer from the State but for ineffective assistance of counsel. She also contends the trial court refused to consider her request for a drug offender sentencing alternative (DOSA). Finally, she points out her judgment and sentence unlawfully imposes interest on a

nonrestitution financial obligation.  We remand with directions to correct the interest

provision, decline to consider her ineffective assistance of counsel claim, and otherwise

affirm.

FACTS AND PROCEDURAL BACKGROUND

Tandy Luna was charged with multiple counts of forgery and identity theft for

creating bogus daycare bills to obtain money from an account maintained for the benefit

of her son.

Through a combination of continuances and failures by Ms. Luna to appear,

charges filed against her in January 2017 did not proceed to trial until almost two years

later.  At the outset of a pretrial hearing on the day before trial was to begin, the trial

court announced its understanding that Ms. Luna was going to enter a guilty plea, but

addressing defense counsel, stated, "[M]aybe that's not so?"  Report of Proceedings (RP)

at 11.[1]  Ms. Luna interjected, "I need more time to talk to my lawyer," and told the court,

"I may need a week to talk to my lawyer.  I have not gotten to see him one time since I've

been in here."  *Id.* at 11-12.  Her lawyer responded, "Well, that's not true, Tandy."  *Id.* at

12.  The trial court stated, "[T]rial starts tomorrow at 9:00."  *Id.*  Ms. Luna expressed her

frustration with an expletive and her lawyer reminded her she was in court.  The hearing

ended at 8:39 a.m.

---

[1] "RP" references are to the transcript of proceedings that includes the March 28, 2019 trial.

During the short period in which these exchanges occurred, the prosecutor said she had a witness who had to travel from the state of Oregon, adding, "She was either going to leave, basically—whether we had a plea, she was going to leave after that." RP at 11. She added, "[T]he deal is valid until my witness Morgan has to leave." *Id.*

The next day Ms. Luna proceeded to a one-day jury trial. Following jury selection and outside the jury's presence, the trial court made a record of the fact that Ms. Luna had a letter she wanted to submit to the court. The trial court told Ms. Luna that it would accept her letter for filing in the court file. The subject matter of the letter was never mentioned and the trial court did not invite any discussion of its contents by Ms. Luna or the lawyers. The trial court told the lawyers, "[I]f she has some appeal issues that are contained in that letter then she should have that opportunity." RP at 76. With that, the court declared a short recess after which the trial proceeded.

The State called three witnesses. The defense did not present any testimony. The jury was excused for deliberations at 2:52 p.m. At 3:13 p.m., proceedings were back on the record, the jury having reached a verdict. It found Ms. Luna guilty as charged.

After excusing the jury and taking a short break, the trial court proceeded to sentencing. The State observed that Ms. Luna had accepted no responsibility and shown no remorse, and recommended that the court impose the high end of the standard range. For the more serious identity theft counts, the high end was 57 months.

No. 36771-1-III
*State v. Luna*

Defense counsel asked that the court impose the bottom end of the standard range.

First, however, he told the court:

> I want to, first of all, explain, I guess, some of my client's actions previous to trial because I think it's necessary that the Court understands why she's made some of the choices she did.
>
> Her mother is dying, in fact, her mother has been convicted of a crime and is subject to sentencing. But they can't sentence her because her mother's condition is so severe, so Chelan County has continued and continued and continued.
>
> She is of the opinion that has—had she taken the bargain and gone to prison she would have never seen her mother alive because of course she can't be released. So, I think that really drove her to trial, unfortunately.

RP at 197.

The trial court invited Ms. Luna to address the court, and we reproduce her statement in its entirety. She refers in her statement to having "tried to call and call and call and take the deal," echoing her letter filed that morning, in which she claimed that after the pretrial hearing the day before, she had unsuccessfully tried to accept the State's plea offer:

> You know, I'm really trying to change my life. I did fourteen months in prison and I was—I got out, you know, and I was in a dependency case and I was following through and trying to get my kids back and, you know, they're the ones that suffered without me, you know? I did not intend to—deceive the Court in any way.
>
> I really, really tried to—change my life and turn it around. This is a really old case and—I've—honestly not slept for a while and am not on my right medication and it's like really, really hard for me to comprehend everything that happened. Overnight it went from one year to this and I'm really scared, you know?
>
> I'm scared for being locked up that long. I don't—I don't like to be in there. I just got out and—when my mom's, you know, on her death bed,

4

it's really put a toll on me. Like, I tried to say this morning before trial that I didn't want to do it and I wasn't in my right state of mind and I had to go through with it though. I tried to hand [sic] it well and—you know, I'm powerless over what happened.

But . . . I would like to please to like—plead the—to at least an exceptional sentence since it was like a year yesterday. I—I in no way—you know, really thought that through . . . when yesterday was up? You know? I tried to call and call and call and take the deal and—I'd like you to please have mercy on . . . me and take in consideration that this is old and I just got out and I was supposed to do a global resolution and then when I came back it was, you know, my time would already have been done.

So, I just—I want to—to have a fair amount of time. I think that over even a year is too much. I was only supposed to have four months left. And I don't know—I don't know what's going on really because I'm not in my right—you know, mental stability; but I—I'm trying to . . . give my faith to the Lord and He can restore me to sanity because . . . this is . . . [a] hard thing to endure. It is.

I'd like to—apologize for taking up the Court's time. I—I tried yesterday to explain that I didn't want to do trial. I did. I was scared of this happening. I'd like to—to at least cry out—to maybe even—if I can do some kind of a DOSA or something that I can really speak to me, like, still trying to work for my dependency. Like, I have that open dependency case and I want to at least be doing something productive and not just sitting away my time. I want to get my kids back; they need me and I'm a really good mom and I'm a good person. . . .

. . . [P]lease give me an exceptional sentence since yesterday, I tried and—have mercy on—on me. I've had a really, really hard life and—I am begging for—I don't know if you read the letter that I wrote to the Court; but if you can find it in your mercy and—I'm begging that you can please give me an exceptional sentence to—something less, like something like I had yesterday. I tried. And like I was forced to do trial. I didn't want to do it.

RP at 198-200.

The trial court responded that Ms. Luna had been warned of the risk she faced if she went to trial. It said it was rejecting the State's recommendation of 57 months

5

because it would leave only 3 months of community custody and it thought there should

be more community custody.  After it announced that it would impose 45 months of

incarceration and 12 months of community custody, the following exchange occurred:

> MS. LUNA:  Can I do a DOSA on that so I can get treatment in—
> and comply in there?
>
> THE COURT:  Well, you've been in—
>
> MS. LUNA:  At least—
>
> THE COURT:  —you've been in prison for twelve months.  I'm not
> sure you have a drug problem.  If you did then you never suggested to me
> that you had a drug problem, so, no.

RP at 202.

Ms. Luna appeals.

## ANALYSIS

Ms. Luna makes three assignments of error.  One, to the interest provision in her

judgment and sentence, is conceded by the State.[2]  We will direct the trial court to make

the necessary correction.

Her remaining assignments of error are a claim of ineffective assistance of counsel

and that the trial court erred by refusing to consider a DOSA.

---

[2] The outdated judgment and sentence form fails to reflect a change of law, effective June 7, 2018, which eliminated interest accrual on all legal financial obligations other than restitution.  LAWS OF 2018, ch. 269, § 1(1).

I.     WE DECLINE TO REVIEW THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL
       BECAUSE THE RECORD IS INADEQUATE

Ms. Luna's claim of ineffective assistance of counsel is based on the letter that she

filed with the trial court on the morning of trial.  It states:

> I have a huge misunderstanding with my lawyer.  I was told by him
> that he had until[ ] noon to agree to the deal.  We talked for a while over the
> phone and then he hung up on me and refused to let me finish talking.  To
> me I was misled and confused.  However I decided to go ahead and take the
> plea offer while it was plenty of time before noon w[h]ich is the time he
> said.  I tried & tried to call him, but he didn't accept my calls.  I had no way
> of letting you nor the prosecutor know other than to call my other lawyer
> w[h]ich is Smitty Hagopian and he repl[i]ed to the deal.  I immediately
> called him and he did let Jeff know that I was trying to get a hold of him to
> take the offer & I had signed the order.  He even talked to the prosecutor he
> said somehow there is a huge mistake in what happened.  I was promised
> by Jeff that I had until[ ] noon to accept the offer and I tried my hardest to
> get in touch with my lawyer and let him know that I wanted to plea.
> However he didn't allow me to get thru on the phone to accept.  I had to
> call my other lawyer just to reply on time.  He did it before the time that I
> was told by my attorney Jeff.  I trusted & believed in Jeff but I was told one
> thing and then he did the opposit[e].  I was lied to and he refused to do
> anything to work on my behalf.  I am requesting a fair action to be made.
> I'm willing to listen and follow through.  Thanks I appreciate a chance to
> [d]o what's in my best int[e]rest.  It's my right.

Clerk's Papers at 91-92.

Relying on the letter, Ms. Luna argues that her trial lawyer provided ineffective

assistance by inadequately explaining the terms of the plea offer and failing to learn of or

timely convey Ms. Luna's desire to accept the offer.[3]

---

[3] In her reply brief, Ms. Luna also argues the trial court had an obligation to
inquire about an apparent conflict between Ms. Luna and her trial lawyer when her letter

The State responds that Ms. Luna's letter is unsworn and the evidence needed to determine whether there is any merit to her ineffective assistance claim is outside the record. It contends that a personal restraint petition (PRP), not a direct appeal, is the proper method for Ms. Luna to seek review of this claim.

To succeed on a claim of ineffective assistance of counsel, a defendant must establish that defense counsel's representation was deficient and that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The parties are properly in agreement that the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22, of the Washington State Constitution includes assisting a defendant in making an informed decision whether to plead guilty or proceed to trial. *State v. A.N.J.*, 168 Wn.2d 91, 111, 225 P.3d 956 (2010). They agree that a defense attorney has a duty to communicate formal offers from the State, and where he or she fails to convey a formal offer with a fixed expiration date, and allows the offer to expire, it is not the effective counsel required by the constitution. *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). If Ms.

---

brought it to the court's attention. Appellant's Reply Br. at 8. We will not consider an argument that was not raised in the opening brief, to which the State has not had the opportunity to respond. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

Luna's trial lawyer did hang up on her without adequately explaining the State's offer, or if Ms. Luna did act with due speed in making a decision to accept the offer and undertake to communicate it to her lawyer but he was unreasonably unavailable, this may demonstrate the required deficient representation. If Ms. Luna did have until noon to accept the offer and if she did make a decision and undertake to communicate it while the offer was still open, this may demonstrate the required prejudice. But nothing in our record other than Ms. Luna's unsworn letter is evidence that these things happened.

Ms. Luna argues in reply that the record on appeal is sufficient because she submitted her letter the morning of trial and "[n]o one corrected her explanation of events" and "[n]o one took issue with her recitation of the facts." Appellant's Reply Br. at 5. Yet, why would they? There was no discussion of the subject matter of the letter Ms. Luna wished to submit. The trial court had a jury waiting and exhibited no interest in having the prosecutor or defense counsel weigh in. From the transcript, one is left with the distinct impression that the lawyers were aware that no motion having been made, the trial court intended to do no more than get the letter entered into the record and move on.

We also observe that Ms. Luna's admissions during sentencing that she was sleep-deprived, not properly medicated, and having difficulty comprehending things casts doubt on her reliability as a reporter. And later, at sentencing, defense counsel implicitly took issue with Ms. Luna's letter, expressing his belief that Ms. Luna chose to go to trial

9

because even the shortened sentence offered by the State would have prevented her from seeing her dying mother.

There must be an adequate record to permit review of a claim of ineffective assistance of counsel. *McFarland*, 127 Wn.2d at 333. If the relevant facts are not in the record on appeal, no actual prejudice is shown and the error is not manifest. *Id.* Where, as here, there is an inadequate record or the need to develop additional evidence, a personal restraint petition is the appropriate procedure.[4]

II.     NO REFUSAL TO CONSIDER A DOSA IS SHOWN

Ms. Luna contends that the trial court erroneously refused to consider a request for a DOSA, requiring a new sentencing hearing.

As a general rule, the trial court's decision whether to grant a DOSA is unreviewable. *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005). The refusal categorically to impose an exceptional sentence is reversible error, however. *Id.* at 342. And appellate review is also available for the correction of legal errors or abuses of discretion in the determination of what sentence applies. *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003).

---

[4] Because an appellate ruling on the merits of an argument will often foreclose review of the issue in a PRP, an appellant is not well served raising an issue on appeal that is not fully developed. *In re Pers. Restraint of Taylor*, 105 Wn.2d 683, 688, 717 P.2d 755 (1986). However, we leave the wisdom of raising issues on appeal to appellate counsel and will assume that they will not raise claims better brought in a PRP.

Here, the trial court did not err or abuse its discretion in determining what sentence applies. It did not find Ms. Luna ineligible for a DOSA sentence. Ms. Luna also fails to identify an improper categorical disqualification. Instead, Ms. Luna argues that the trial court refused the DOSA because she never suggested she had a drug problem, yet the same trial court had presided over continuances in the case occasioned by drug treatment for Ms. Luna that she never completed.

Ms. Luna points to a hearing taking place in July 2017 at which she was before the court on a motion to revoke her pretrial release, but the trial court agreed instead to strike her trial date so that she could be admitted to Isabela House. She points to a hearing in August 2017 where it was reported that she was still in treatment. She points to another hearing in October 2017 at which defense counsel reported to the court that she had failed treatment, having left Isabela House after the original plan that her children would be allowed to live with her there changed.

The hearings to which Ms. Luna points all took place some 18 months or more before sentencing. At none of those hearings did Ms. Luna admit, herself, to having a drug problem.

At sentencing, defense counsel did not ask for a DOSA. When Ms. Luna raised it as a possibility, she did not say she had a drug problem; she said, "[I]f I can do some kind of a DOSA or something that I can really speak to me, like, still trying to work for my

11

dependency. Like, I have that open dependency case and I want to at least be doing something productive and not just sitting away my time." RP at 200.

It is not uncommon to see a request for a DOSA denied where the trial court recognizes the defendant might have a drug problem but is not persuaded that the defendant recognizes the problem and is prepared to work on it. Nothing in the record suggests that what the trial court said in denying Ms. Luna's request for a DOSA was incorrect. Again, the trial court said:

> [Y]ou've been in prison for twelve months. I'm not sure you have a drug problem. If you did then you never suggested to me that you had a drug problem, so, no.

RP at 202.

Where the defendant disputes material facts at sentencing, the court must either not consider the fact or grant an evidentiary hearing. RCW 9.94A.530(2). Ms. Luna did not dispute the trial court's statement that she never admitted having a drug problem. A trial court may rely on facts that are acknowledged, and acknowledged facts include facts considered during sentencing that are not objected to by the parties. *Id.*; *Grayson*, 154 Wn.2d at 339.

We decline to consider the ineffective assistance of counsel claim. The convictions are affirmed. We remand with directions to correct the judgment and sentence to provide that no interest shall accrue on nonrestitution obligations imposed.

No. 36771-1-III
*State v. Luna*

Ms. Luna's presence is not required at any hearing to make this ministerial correction. *See State v. Ramos*, 171 Wn.2d 46, 48, 246 P.3d 811 (2011).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.

13